What we're going to do, we're going to hear argument in the first case and then we'll take a short recess after that. The first case is G.B. v. United States Environmental Protection Agency, case number 25-2473. Everybody can sit down, by the way. Thank you for your attention. You're very well behaved. G.B. v. United States Environmental Protection Agency, case number 25-2473. And we've got 20 minutes per side. Just pay attention to your time. Let us know for the appellants whether you want to reserve any time. And then, you know, try and sum up as your time's expiring. So we'll hear first from, is it Ms. Kubwika? Did I get it right? Yes, Your Honor. Close enough. You're not going to correct me. Kubwika is fine. All right. Yep. Go ahead. Good morning, Your Honors. May it please the Court. I'm Brianna Rozier-Kubwika for the 18 young plaintiffs, many who are here today. I would like to reserve five minutes of my time for rebuttal. This case presents a controversy between Children, the most politically and economically powerless group in our society, and EPA, the sole agency charged with protecting their air from harmful pollution. When Congress directs EPA to provide a public benefit of limiting pollution, EPA may not do so in a discriminatory manner. Yet it does. EPA does cost-benefit analysis using discounting in every rule it promulgates. And those discounting policies create a time preference. Let me ask you this, of course. There's a lot to talk about here, but I want to focus on what it is that the district court decided here. The first thing the district court said was that you failed to plead facts, showing that your asserted environmental harm is not traceable to the alleged discounting practices. What is your response to that? Your Honor, the district court opinion relied on whether or not the policies were binding or not binding to determine if the injuries were traceable to the unequal treatment that was occurring here. And in this case, where it's an equal protection case, we need not prove that the binding that the policies are binding, only that they are discriminatory and that EPA has been implementing those policies in step with the direction from those policies. And that they are traceable. I think that was very important to the district court. I certainly empathize with the underlying concern. But as you very well know, I'm sure you're an expert in LePon at this point and its progeny. And this is pretty ephemeral stuff. It's fine to say that this happened, that happened. But you've got to show it. You've got to trace it. And I'm not seeing that. Help me with that. In what way was the district court wrong in saying that you were not tracing the alleged discounting practices to the result that you claim occurs? Your Honor, in our allegations, we allege that there is a discriminatory policy and that is where the unequal treatment begins. And let me stop you there. It's discriminatory in what way? Children are not singled out here. In what way is it discriminatory? I think it'd be helpful, Your Honor, if I first address how it's discriminatory and then I can walk you through that causal chain. And so in terms of how it's discriminatory, if you look to the language of the policies themselves, they employ this language of a time preference. And that preference is really important. That's a discriminatory word in and of itself because what's being preferred when a discount rate is employed is a preference for adults' economic interests now over children's health, their lives, and their futures. And so that is what discounting functions to do. And not only did we allege that in our complaint, but we also had support from economists like Dr. Joe Stiglitz, Dr. Daganova, that clarified that the discounting policies can only operate to discriminate. Order, Papa, aren't you forgiving? It seems to me what you're arguing is disparate impact, right? Isn't that the underlying basis of your claim? There's certainly disparate impact, Your Honor, but there is also explicit discrimination in discounting itself. And I think an easy way to think about this is in a case that you wrote not too long ago, Your Honor, the Borja v. Nago case. In that case, the statute that was challenged did not explicitly exclude the plaintiffs that were seeking to vote absentee. Instead, that was found in another part of the statutory provisions where it defined what the United States was. And so it was only when you understood the definitions of the words that were at issue that you could see the discrimination. So similarly here, the court needs to understand what discounting means and how it actually functions and operates. And when you understand it operates to be discriminatory, then it's constructively discriminatory. And we are, from your perspective, to understand that based upon the testimony of the doctor to whom you made reference? Your Honor, I didn't quite catch your whole question. Could you? I'm sorry. You were saying it was discriminatory. And I'm saying in order to arrive at that conclusion, we rely upon the testimony of Dr. I've forgotten his name. Forgive me. And the other doctors. Is that what we're relying upon? No, Your Honor. This is a this case should be decided on the four corners of the case. We don't believe that it has been decided on the four corners of the case and that factual evidence has been disputed. However, we've also alleged in our complaint that the policy is operates to disfavor and the court can look to the record at three fifty three to three to three thirty six three ninety six and four oh two, which includes allegations about how the policy actually operates to discriminate. And so that's what we would ask the court to rely on. If the court does find there are factual disputes, then we would turn to those declarations that we submitted as well. So and you believe that you have alleged sufficient facts that actually alleged discrimination against actual plaintiffs. And it's directly attributable to that. That's your claim. Yes, Your Honor. And maybe I can walk through the causal chain to get to get there as well. So, as I said, we've alleged that the policy itself facially, if not constructively, facially discriminates against these against children as a class. But forgive me. I mean, interrupt you. We got a lot to talk about. How how are these policies facially discriminatory against children? They currently apply to everybody to the degree they apply at all. Do they not? The policies, the policies themselves employ the discount rate, which is discriminatory. It creates a difference of treatment. I understand you're saying that's what happens. But on the face of them, they don't say except children. Right. They don't say that explicitly, but they it's constructively discriminatory because discounting can only operate to discriminate. If if we're taking the definition, it's not basically discriminatory. It's impliedly so. It's implied within the words. That's correct. Your Honor. So in terms of what happens after the policies are, the EPA takes these policies and it discounts through its regulatory programs. That's through start to finish. Your Honor. We've alleged on pages 350 to 351 that EPA is required to discount early in the regulatory design phase. So that not only informs what kind of regulatory programs they pursue, what regulatory options they consider and what regulatory options and how they limit the alternatives of what they consider. And then it ultimately informs the final rules that EPA issues. Those regulatory programs we've alleged have resulted in allowing climate pollution in substantial amounts. And the court can look to our allegations from 367 to 373 of the record. Those demonstrate that there are substantial amounts of pollution that is being allowed under these regulatory programs that directly impact these plaintiffs. The court can take a look at all of their direct injuries from that pollution in 320 to 346 of the record. And the court can even look specifically how it's personalized to these individual plaintiffs. For example, you can look to Noah, who has been displaced from her home on multiple occasions because of wildfires from this climate pollution and has had localized impacts from both the particulate matter that results from this pollution and from the wildfire smoke. Can I ask a question about that? I guess this is just to prove causation, right? Because where she's been displaced, adults have been displaced as well. So you're not using that. You're just using that to show the causation. You're not using that to show the disparate or the discriminatory effect. Right now, I'm walking through the causal chain, but I think it's important to note that children are different than adults. And so when we talk about climate pollution, that is when EPA allows climate pollution, that is unequal treatment in and of itself, because children are not the same as adults. They're not just little adults. They are. We've alleged in our complaint that. Well, but it's not a pollutant in the normal sense that like carbon dioxide causes harm today. It's not like breathing in smoke inhalation. Right. I mean, it's your reliance is these are these are harms that are going to materialize, you know, some sooner than later, but over a period of time. So it's going to affect them disproportionately throughout their lives, but not necessarily while their children. It will certainly affect them while their children, because the pollution that is in the air right now will impact whether they develop certain health conditions, how those health conditions manifest themselves in the future, those health harms that they're experiencing, the displacement that they have. But carbon dioxide doesn't cause that. You're saying because of the downstream effects of the carbon dioxide, that's what's going to cause the harm. I'm confused. Yeah, that's correct. That's correct, Your Honor. So the the predictable effects of climate pollution. And when we talk about predictable effects, that's the standard that the Supreme Court recently articulated in Diamond Alternative Energies. The predictable effects, as we've alleged in our complaints, is that pollution will result in these harms that are happening right now to these plaintiffs. And that matters that it's right now as they are children, because when children experience these kinds of harms that are catastrophic and profound, those are harms that result in traumas, which result in health conditions that won't happen in the future. They'll carry those the rest of their lives and they will only multiply as they get older. Does that not apply to the adults as well? And this is part of what I struggle with. Facially, there's no allegation about children. If there's harm to children, there's also harm to adults, right? I would agree that there is harm to adults, but that harm is not the same. And just because it doesn't have to be the same, does the harm have to be the same for it not to be discriminatory? Correct. I don't think I don't think it has to be the same. The harm in terms of adults and children experience the harm differently. And just because adults may benefit from the unequal treatment being eliminated in EPA's policies and practices does not mean that it's not discriminatory towards children. And so when we talk about with respect to counsel, you know, you've alleged equal protection claims and others and so on. You have to be able to carve these things out. And it seems to me that what your allegation says is this is harmful to everybody. Harmful to everybody. But we imply that it's especially harmful to children, but doesn't say that. It's an implication, right? No, your honor. We we allege that there it's specifically harmful for children. If you go to an intentional, is it intentional? Is there anything in the reg or in the I'll call it an aspiration that says we're intending to harm children more than adults? There's nothing like that, is there? Your honor, the fact that EPA uses a policy that can only operate and they know can only operate to discriminate to children raises an inference of intent. That's certainly suffices for standing. But I and why why is that? Why is such an inference on if I may say so, a highly speculative situation enough to confer standing in this case? Your honor, we wouldn't say that the situation is speculative, but in terms of why it's it's permissible, the court can look to if we're talking about intent. Well, it's really hard in these discrimination cases because there's not a lot of 12 B1 cases because the burden is simply to allege that there's unequal treatment. And we've alleged that there's unequal treatment and that it's and let's go to Juliana, which we're bound by. Can you distinguish Juliana? Because as I read Juliana, it says these are speculative harms. And it seems to me that the harms there were even less speculative than what you have here. They were actually alleging all of the concrete harms. You're alleging a one procedure that has to ricochet through the system. That seems to be less speculative or excuse me. That seems to be more speculative than what was in Juliana. So can you explain to me, given Juliana, how we would rule in your favor? Yes, your honor. Juliana does not control here. So Juliana involved different conduct. It involved different claims and it involved different relief. I agree with you, but that's my question is it seems like it was broader claims and, you know, broader relief and broader harms that were actually more concrete than what you've alleged here. So that that's what's troubling me. Your honor, the Juliana case did not consider an unequal treatment injury. And that's important because that is when we look at Worth v. Selden, when we're talking about standing, the standing can turn on the nature of the claim, especially in equal protection claims. And that was never even considered in Juliana. So when we're talking about unequal treatment, what we need to show in terms of causation is that there has been harm from that unequal treatment, which we've alleged, and that it can be remedied by eliminating that unequal treatment. And so we've alleged that or we've requested in this case a declaration that the discounting policies be held unconstitutional and that EPA ceases treating children unequally in its in its cost benefit analyses. And that is the traditional relief sought in equal protection cases. And your honor, I see that I'm close to my time. I'll let you have your time, but I just it's the speculative nature of this I'm troubled by. So when you come back, perhaps you can address that more.  Also, Judge Goulden, I'd like you to give thought to a question I have. My question relates to the use of a present computing, a present counsel. I mean, a present value of either the costs will be incurred in the futures or the benefits of taking action to avoid injuries. And I'd like you to address when you come back some discussion of that question. Thank you, your honor. I appreciate that. Okay, we'll give you time for rebuttal. Thank you so much. Good morning, your honors. May it please the court. Christopher Anderson for EPA and OMB. Your honors, plaintiffs lack standing to sue for the simple reason that they cannot show a causal connection between the challenged guidance on discounting and any regulatory action that would harm their personal and concrete interests. This case is materially indistinguishable from Louisiana v. Biden and Missouri v. Biden. In those cases, groups of states sued to enjoin use of estimates of the social cost of carbon in regulatory impact analyses. And both the Fifth and Eighth Circuits held that the states lack standing to sue because agencies consider a great number of other factors in determining when, what, and how to regulate or take agency action. For that reason, any connection between the social cost of carbon and future regulatory actions that could harm the state's interests was speculative. That is equally true for this case, your honor. Honors, excuse me. The plaintiffs allege that EPA under-regulates greenhouse gases because its regulatory impact analyses discount future benefits. The plaintiffs do not make allegations that show that EPA's future regulatory decisions will be determined by a cost-benefit analysis or that a cost-benefit analysis is even likely to be a significant factor in any future decision. Plaintiffs do not even make specific allegations that discounting has led to under-regulation in the past. It is remarkable that in a 423-paragraph amended complaint, one that expressly relies on past conduct as evidence of future harm, plaintiffs do not cite a single instance in which EPA rested a regulatory decision, even in part, on a discounted estimate of future benefits. We pointed out that omission in our brief at page 48. Counsel, can I ask you, what is the purpose then? I mean, you agree that they have to go through the process. The OMB regulation says that you have to go through the process. If it's never used, what's the point of it? So I want to be very clear. We are not saying, we've never claimed that regulatory impact analyses don't play some role in an agency's decision-making process. But for purposes of standing, we have to… It's only for the high-level regulations, right? You're saying for regulations above $100 million in impact, or am I wrong about that? It's only for significant regulatory actions. I don't have the dollar threshold at the tip of my tongue, but yes, it's only for significant regulatory… But many EPA Clean Air Act actions are significant regulatory actions, for sure. We have never claimed, contrary to what the plaintiff said in the reply brief, that EPA does not consider regulatory impact analyses. What we've said for standing purposes is that there must be a relatively close fit between the conduct complained of and the action that's going to harm their interests. And because this is a prospective relief case, they have to show that that fit applies to future regulatory actions that the agency hasn't taken or even at this point proposed. So while it is possible that in the future EPA may rely on a regulatory impact analysis in some regulatory decision-making, until we have a concrete action to look at to understand how that analysis applies to its decision-making, the plaintiffs can't show standing. And there's not an Article III case or controversy for the court to adjudicate. This gets back to the speculative nature, right? Yes. Yes, Your Honor. It does. Also, Your Honors, it does not change the analysis in any way that plaintiffs attempt to frame their case as a discrimination case. As the Supreme Court explained in Allen v. Wright, to show standing based on discrimination, a plaintiff must allege both discriminatory conduct and that the plaintiff's personal interests have been harmed as a result of that conduct. In other words, the asserted injury must meet the ordinary test for traceability. Yeah. And this comes up in a lot of these standing cases where traceability, I mean, at some point that starts to look more like a failure to state a claim as opposed to a standing issue. So how do we grapple with that? Because, I mean, you know, where's the fine line between saying, well, you know, you don't have any claim here because you can't state an equal protection claim based on these facts versus you don't have any standing. Right. I think, Your Honor, in this case, the easy way to look at it is this. Putting aside whether they've adequately alleged a discriminatory harm, what plaintiffs say is the EPA discriminates when it discounts future effects in regulatory impact analysis. And it says that they are personally harmed by the effects of climate change. So in order for them to have standing under Allen, they have to show that there's a reasonably close causal connection between that conduct and those effects. And for the same reasons that their environmental harms don't suffice to give them standing, their discrimination harm doesn't suffice to get them standing because they have to show not just that the impact analysis is discriminatory, but that that analysis is then going to lead through to a concrete regulatory action that's going to have effects in the world, that's going to contribute to climate change, that's going to harm their personal interests. And all of those steps are just too many. And that's the entire rationale of Louisiana and Missouri v. Biden, is that the chain is just too long. But in any event, Your Honor, the plaintiffs have failed to plead discriminatory treatment. The challenge guidance is neutral in its face, as Judge Smith observed. And plaintiffs make only conclusory allegations of discriminatory intent unsupported by any allegations of specific facts. I mean, one of the curious things, and maybe I should have asked the appellants this, but they seem to be focused on the youth. But it seems to me if there is any impact, it's really just that the younger you are, I mean, you could be 20, not a youth. But under their theory, the longer that you're here, the impact is going to be greater. So it's just that you're going to experience greater impacts over a longer period of time. Am I wrong about that? Or is there something specific to minors under 18? I mean, I don't understand this magical number in this case. Right. I think you're right, Your Honor, is the short answer. I mean, as far as the discounting goes, that is absolutely correct. Plaintiffs have made certain allegations that children are especially susceptible to climate harms. As you pointed out, those harms are going to occur in the future from any future regulatory action long after these plaintiffs are no longer children. But what I'd like to say, if I could go back to discounting and why OMB and EPA discount. So discounting, as the agencies explain in their guidance, the purpose of it is to treat future and present effects equally. It is not to treat future effects as less important. It is based on empirical observations about behavior in the economic marketplace, saving behavior, investing behavior and economic theory that suggests that in order to treat present and future effects equally, you have to discount the monetary value of future effects. Now, plaintiffs allege that that's wrong. They have expert declarations that point out well-known limitations to that analysis. But that is a facially plausible, well-supported, non-discriminatory justification for the use of discounting. And plaintiffs haven't made any allegations in their complaint that under the ICPAL standard or this court's decision in would-be city of San Diego that would suggest that that plainly plausible, non-discriminatory justification is pretextual or that would otherwise support an inference of intentional discrimination. And so for that reason, we don't think that the plaintiffs adequately state equal treatment. But the entire case can be decided. Both the equal protection and the environmental harms can be decided simply on traceability grounds following the Fifth and Eighth Circuit's analyses. From a pleading perspective, can I ask you this question? Do we have to assume the truth of their allegations that the government maintains a de facto policy of discounting future costs and benefits just because they allege it? So I don't think so, Your Honor. I mean, they allege that there are these policies which we don't dispute and the EPA follows these policies, which again, I don't think we really dispute. But then they go on to make claims like at paragraph 162 of their complaint, they say that the discounted cost-benefit analysis controls EPA's decision-making. Well, that's not an allegation that the court needs to accept. And the court doesn't need to accept it for three reasons. First, it's either a conclusory allegation of fact or a conclusion of law dressed up as an assertion of fact that the court does not assume the truth of. Secondly, the court, as this court held in Sprewell v. Golden State Warriors, is entitled to consider the contents of documents referenced in the complaint or attached to the complaint. And as we pointed out in our brief, the contents of Circular A-4 and the EPA guidelines go into great detail about why that allegation of control is not true. And then finally, putting all that aside, the allegation still has to be plausible. And as the Supreme Court said in Iqbal, plausibility requires the court to exercise judicial experience and common sense. And judicial experience and common sense tell us that when EPA is making a complex regulatory decision, it is not doing so solely on the basis, or even in most cases at least, predominantly on the basis of a single regulatory impact analysis. It's considering statutory factors. It's considering scientific factors. It's considering policy factors. And yes, it's considering economic factors. But these are all just components of a decision. And for that reason, the traceability is just not establishable. And in none of those that I'm aware of, is there any allegation that there is an intentional discrimination against young people, right? There is only... They do say at certain points in their brief that the guidelines purposely discriminate against young people. But that, again, is a conclusory allegation, Your Honor, that is belied... The court doesn't have to accept and belied for the reasons that I said. I mean, I would point you to Chief Justice Robert's opinion on the D.C. Circuit in Hedgepeth, Hedgepeth versus WMATA, that talks about this idea, the plausibility of children as a powerless political class and the plausibility of actions taken for the purpose of purposefully discriminating against children. Without more, they haven't... So I wanted to focus on Dr. Stiglitz. He declared that the discounting policies have a disproportionate effect on children and future generations because they attach a lower value to a person born later. That's in his declaration. Can you explain why that... I mean, as a factual matter, do you disagree with that or you accept that but say, legally, it doesn't get you standing? So as a factual matter, we disagree with that. And as is explained in Circular A4 in particular, the purpose of discounting, as I said, is not to treat people at all. It's to treat effects of regulation in the first place. Right, but he doesn't even seem to say that it's... He just is talking about, it has a disproportionate effect on children. I mean, that doesn't seem implausible to me in the sense that, again, statistically, they're going to be on the earth longer and therefore... So that's why I'm wondering whether it's a factual dispute or whether you're like, hey, take that as is. It doesn't matter. It doesn't get you there legally. So I think the factual question is complicated and we certainly don't concede that the way Dr. Stiglitz characterizes it is correct. But I think the easier way for this court to address this case is to say, assume that that is correct. Assume that the regulatory impact analyses that EPA prepares are flawed in that they don't accurately account for future effects in a way that is going to burden people alive 50 years from now. Assume that that's correct. They still can't show traceability because they can't, again, getting back to the Fifth and Eighth Circuit decisions about the social cost of carbon, they can't show the connection that the Supreme Court requires between the preparation of a cost-benefit analysis and an actual regulatory action that's going to cause them harm. And I think, you know, in this regard, you know, there's the famous line from Allen and Wright when Justice O'Connor is talking about traceability, and she points out that the purpose of the requirement is rooted in the separation of powers. It's to keep the courts away from abstract questions of regulatory policy and focused on adjudicating allocations of individual specifically identifiable government violations of law. You know, at this point, without even a proposed regulatory action to analyze, it's impossible to know, will the FDA apply these guidelines for any particular case? How will they apply them? As we pointed out in our briefs, since the court is entitled to consider, the guidelines explicitly state that agencies must use judgment in how discounting is applied and give agencies a wide range of discretion to deal with the problems with discounting and future effects. So we have to know how the agency is going to do that. Then we have to know how the agency is going to incorporate it into its decision-making processes. And then we have to know what the actual action is and whether it would have made any difference. None of those things are knowable when we're looking at a guidance document in the absence of any concrete regulatory action. And so for that reason, we think that the cases, whether it's analyzed and understanding or rightness, the core problem here is the case just isn't justiciable. It's just not an Article III case or controversy until we have some government action for the court to review. If there are no further questions, Your Honor, we would ask that the judgment of the district court be affirmed. Thank you so much. Thank you. Your Honors, I want to start with your question about the speculation, Judge Smith. And I think it's really important that the speculation that the court may be sensing is because we do not have a full record of evidence before it. This is a 12B1 motion. And... Did you ask for discovery, for jurisdictional discovery? Your Honor, no. We did not ask for jurisdictional... Because you can get limited jurisdictional discovery. So, I mean, I agree that you don't have a full record of evidence before you. But, I mean, that... I don't know... You still either have to put it in the complaint or you have to at least get some limited jurisdictional discovery that would support it. Well, what we've alleged in this complaint is that there is... that there is unequal treatment and that the court must take as true the facts in the complaint that there is unequal treatment, that children are different from adults and that they've been harmed differently. There was intention, which the other side already pointed to, that we've alleged, but also we described that the policy operates to disfavor at 353 through 336, 396 to 402. And so the court cannot ignore those allegations. And I think it illustrates how this case is really intertwined with the merits, as is discussed in Bowen. And it makes it very difficult to be able to... It makes it what seems speculative would be fleshed out when the merits are fleshed out in the case. But, counsel, this is what I was hoping I'd get from you. The reality is this is all perspective. You just don't know. You can suppose, you can allege, but these are conclusory allegations. And, Your Honor, I struggle with how you get past that. How can you show causation if something doesn't even exist? I'm sorry? I apologize. I didn't mean to interrupt you, Your Honor. Go ahead. I would turn the court's attention to the village of Arlington Heights, where the court makes clear it's an equal protection case to be able to prove intentional discrimination, a pattern of discrimination. It's a highly evidentiary issue. And the court can look to past actions by a discriminating party to determine if there's discrimination. And we've alleged past discrimination in the record at 356 to 362. So, E.P. is... But the problem with village of Arlington Heights is it requires showing of discriminatory intent or purpose. And that's where I think this... I mean, even if we accepted the view that this has a disproportionate impact that's different. And I think village of Arlington Heights makes it clear that's different than actual intent or purpose. That's correct, Your Honor. But we've also alleged that the policies operate to discriminate. And I think the court is... The court below really just didn't take into account those factual allegations that show that there is intention. Because discriminatory parties don't usually admit to it. Government parties don't usually admit that they're discriminating. These are harms that are happening right now to these young people that are ongoing harms to the future. And they can be traced to EPA's unequal treatment to them in the law. And they deserve equal protection in the law, Your Honor. I see I'm out of time. Judge Gould, I wanted to ask. You asked a question before. Do you feel like you've been addressed or do you want to... Well, I don't think my question has been addressed here by appellant. So let me just frame it. I'll try to take a different slant on it. What I'm trying to hear is the appellant's view on the significance of cost-benefit analysis. And what is the significance of an agency discounting both costs and benefits to a present value? So as a prelude, if you were going to get a benefit of a $10 payment from someone, and you could either get that $10 benefit tomorrow, get one day, or you could get it 100 years from today, are those benefits equal or do you have to discount the value of that benefit 100 years from now to a present value? Your Honor, I think you're really getting to the heart of the discrimination here because when there is discounting, it assumes that we are taking the preferences of consumers now. But we've alleged in our complaint that children are not consumers. They have no political or economic power. And so when we're talking about consumers now, we're talking about adults and their interest in having a buck today rather than having benefits in the future and rather than thinking about the immediate health benefits to children today. And so that illustrates an adult-centric policy that discounts the immediate cost to children and the long-term cost of children. Hopefully that answers your question in terms of if it's necessary. That's sufficient for me. Thank you, Counsel. Thank you, Your Honor. All right, thank you. Thank you to both counsel for your arguments in the case. The case is now submitted and the Court will take a brief recess.
judges: GOULD, SMITH, NELSON